IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANDRA E. KUSMA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | No. 07-cv-3404 |
| MERCK & CO., INC., et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION & ORDER

Rufe, J.                                                                                                                                            March 13, 2009

Plaintiff Sandra E. Kusma brings this action against Defendants Merck & Company, Inc. ("Merck") and the Retirement Plan for the Salaried Employee of Merck & Co., Inc. ("Plan") alleging violations of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Now before the Court are the parties' Cross-Motions for Summary Judgment, the parties' Responses and Replies, as well as Plaintiff's Sur-reply. For the reasons set forth below, Defendants' Motion will be granted and Plaintiff's Motion denied.

## I. BACKGROUND

### A. The Plan & Plan Documents

The Plan is funded by Merck through payments into a trust fund of "all amounts which it deems necessary or appropriate to properly fund the plan."[1] The trust fund monies are for "the exclusive purpose of providing benefits to Participants and their Beneficiaries and defraying the reasonable expense of administering the Plan."[2] The Plan names Merck as the Plan

---

[1] Defs.' Legal Mem. in Further Supp. of Defs.' Mot. for Summ. J. and in Opp'n to Pl.'s Cross Mot. for Summ. J. [Document No. 14] ("Defs.' Resp.") Ex. to Aff. of Helene Kulaga ("Kulaga Aff.") at Merck 0240 § 13.3.

[2] Id. at Merck 0240 § 13.4.

Administrator.[3] It also delegates responsibility for the supervision and administration of the Plan to a named fiduciary, the Employee Benefits Committee ("Committee").[4]

The Committee has "full discretionary power and authority to make factual determinations, to interpret the Plan, to make benefit eligibility determinations, and to resolve all questions arising in the administration, interpretation and application of the Plan."[5] All initial claims, however, are determined by a Claims Administrator designated by Merck.[6] If a claim is denied by the Claims Administrator, the Plan participant may appeal that denial to the Committee.[7] According to the Plan, the Claims Administrator and the Committee "have discretion to review and determine related factual questions and to construe the terms of the Plan" when determining claims for benefits.[8]

The terms of the Plan require Plan participants to elect a payout option determining how they will receive payment of their pension benefits.[9] The Plan describes several payout options, including two labeled as "Life Annuity" and "Social Security Leveling."[10] The Life Annuity is a "monthly payment of a Participant's Accrued Benefit payable to the Participant during his or her

---

[3] Pl.'s Reply to Defs.' Mot. for Summ. J. [Document No. 15] ("Pl.'s Resp.") at *1 ¶ 5; Defs.' Reply Legal Mem. in Further Supp. of Defs.' Mot. for Summ. J. [Document No. 16] ("Defs.' Reply") at *2.

[4] Defs.' Resp. Kulaga Aff. Ex. at Merck 0236 §§ 12.1, 12.3(a). The Employee Benefits Committee performs the same functions as the Pension Committee described in the Plan. Defs.'s Resp. Kulaga Aff. ¶ 4.

[5] Defs.' Resp. Kulaga Aff. Ex. at Merck 0237 § 12.3(c).

[6] Id. at Merck 0237 § 12.3(d)(1).

[7] Id. at Merck 0238 § 12.3(d)(2).

[8] Id. at Merck 0238 § 12.3(d)(4).

[9] Id. at Merck 0212 § 6.1.

[10] Id. at Merck 0212-0214 § 6.1.

2

life."[11] The Social Security Leveling payout option is defined as:

> A monthly payment payable to the Participant's Social Security Benefit during his or her life of such amount that, with the Participant's Social Security Benefit . . . he or she will receive, so far as possible, the same amount each year before and after such Social Security Benefit commences, which benefit shall be the Actuarial Equivalent of the benefit to which the Participant would be entitled under Seciton 6.1(a) above.[12]

According to the terms of the Plan, this election "may be made or revoked at any time during the 90-day period ending on the Participant's Annuity Starting Date, but shall become irrevocable after such date."[13] The "Annuity Starting Date" is defined by the Plan as "the first day of the first month for which an Accrued Benefit is payable as an annuity or, in any other form, and shall not occur prior to the first day on which all events have occurred which entitle the Participant to payment of such benefit, including but not limited to terminating employment, making necessary elections, and obtaining required consents, as the case may be."[14] It is undisputed that Plaintiff's Annuity Starting Date was January 1, 2007 and that she did not revoke or change her election at any time before that date.

At some point, Plaintiff was supplied with a Summary Plan Description ("SPD") of the Plan.[15] The SPD informs Plan participants that they must select a payout option, or form of benefit, to determine how their pension benefits will be paid.[16] The SPD explains that "[a]ll forms of benefits are actuarially equivalent to the *Life Income for You Alone*. That means that

---

[11] Id. at Merck 0212 § 6.1(a).

[12] Id. at Merck 0212 § 6.1(f).

[13] Id. at Merck 0214 § 6.4(a).

[14] Id. at Merck 0192 § 2.6.

[15] Pl.'s Resp. at *1 ¶ 6; Defs.' Reply at *2.

[16] Compl. [Document 1] Ex. B at *21.

3

based on the actuarial assumptions used by the Retirement Plan—chiefly, mortality and interest rates—all forms of benefit have the same value."[17] Next, the SPD explicitly states that the "form of payment you select becomes irrevocable on your Annuity Starting Date."[18] The SPD defines "Annuity Starting Date" as the "first day of the month after you have done everything required by the Retirement Plan for you to commence your benefit."[19]

Listing the payout options that Plan participants can select, the SPD first lists "Life Income for You Alone," stating that "[u]nder this option, you will receive a monthly pension benefit as long as you live. Although this option provides you with the largest amount of monthly income while you live, when you die, no payments will be made to your spouse or survivors."[20] The SPD also provides that if a Plan participant decides to receive benefits before the age of sixty-five, that participant can choose the "Social Security Level Income Benefit."[21] Under this payout option, Plan participants receive

> a larger monthly income benefit from the Retirement Plan until you start receiving Social Security, which you can designate as age 62 or age 65. Then, once your Social Security Benefits begin, your Retirement Plan benefit is reduced. In this way, your income from the Retirement Plan alone, and then from the Retirement Plan plus Social Security, remains approximately level throughout your retirement years.[22]

Before retiring, Plan participants are instructed to contact Employee Services to receive forms that must be completed to receive their pension benefits, a statement of the benefit amount they

---

[17] Id.

[18] Id.

[19] Id. at 28.

[20] Id. at 21.

[21] Id. at 22.

[22] Id.

4

are entitled to receive and guidance on retirement options.[23]

### B. Plaintiff's Retirement & Selection of a Payout Option

Plaintiff was employed by Merck and a contributing participant in the Plan until 2003 when she was laid off.[24] Plaintiff still received certain benefits from the Plan until she was eligible to retire at age 55.[25] A Retirement Benefits Summary ("RBS") was provided to Plaintiff on November 8, 2003, when she was no longer employed by Merck and was being bridged to retirement.[26] The RBS assumed Plaintiff would retire on January 1, 2007, and estimated the monthly payments she would receive from the Plan under four different payout options, including: (1) Monthly Option, (2) Monthly Guarantee Options, (3) Monthly Joint and Survivor Options and (4) Lump Sum Option.[27]

Updated versions of the RBS were provided to Plaintiff upon her request on August 22, 2006 and on November 30, 2006.[28] The November 30, 2006 RBS was transmitted as an attachment to an e-mail from Diana Maisto, an employee in Merck's Human Resources Department, stating: "I believe you now have everything you need."[29] The updated versions of the RBS estimated the same four options, but also stated that "In addition Monthly Level Options

---

[23] Id. at 24.

[24] Pl.'s Resp. at *1 ¶¶ 6, 7; Defs.' Reply at *2.

[25] Pl.'s Resp. at *1 ¶ 7; Defs.' Reply at *2.

[26] Pl.'s Resp. at *1 ¶ 8; Defs.' Resp. Kulaga Aff. Ex. at Merck 0025, 0043.

[27] Defs.' Resp. Kulaga Aff. Ex. at Merck 0025.

[28] Id. at Merck 0015, 0020, 0043.

[29] Compl. Ex. C at *1.

5

are available. They will be furnished upon request."[30] It is undisputed that prior to January 12, 2007, Plaintiff was not provided with an RBS estimating payments under the Monthly Level Income Options.[31] The projections for the Monthly Option in each version of the RBS versions shows a decrease in payment at age 62.[32]

Prior to sending Plaintiff the updated RBS, Maisto e-mailed Plaintiff on November 29, 2006 thanking her "for being an active participant at the retirement teleconference."[33] Maisto later notes in a February 6, 2007 e-mail to Helene Kulaga, Secretary to the Committee, that she was referring to a retirement/pension teleconference in which Plaintiff participated during which Maisto reviewed all the payout options and their definitions.[34] Also attached to the November 29, 2006 e-mail was retirement paperwork for Plaintiff to complete.[35] Included in the paperwork was a Retirement Election Form allowing Plan participants to select a payout option.[36] Plan participants were asked to "initial option benefit selected" from the following options: (1) Life Income for Me Alone; (2) Life Income for Me Then 50% to My Spouse or Survivor; (3) Life Income for Me Then 100% to My Spouse; (4) Life Income with a Single Sum Guarantee, with boxes for 5 Year, 10 Year and 15 Year; (5) Life Income with Social Security Leveling, with

---

[30] Defs.' Resp. Kulaga Aff. Ex. at Merck 0015, 0020.

[31] Id. at Merck 0014, 0043.

[32] Id. at Merck 0015, 0020, 0025.

[33] Compl. Ex. C.

[34] Defs.' Resp. Kulaga Aff. Ex. at Merck 0120.

[35] Compl. Ex. C.

[36] Compl. Ex. D at *1 § 1.

6

boxes for Age 62 and Age 65; and (6) Lump Sum Distribution.[37] The Retirement Election Form states "I understand my election is irrevocable on my Benefit Commencement Date."[38] The backside of the Retirement Election Form includes the same descriptions of the payout options as were included in the SPD.[39]

On December 11, 2006, Plaintiff completed the Retirement Election Form, electing the Life Income with Social Security Leveling to Age 62 ("62 Leveling") payout option.[40] A final version of the RBS was prepared on December 20, 2006, including for the first time estimates of the Monthly Level Income Options, including the 62 Leveling payout option selected by Plaintiff.[41] This RBS, however, was not provided to Plaintiff prior to her Annuity Starting Date.[42] Plaintiff claims she intended to select the option which would pay her pension benefits in the manner described by the RBS as the Monthly Option.[43] The RBS and the Retirement Election Form used inconsistent terminology to describe the various payout options. So, the RBS's "Monthly Option" actually corresponded with the "Life Income for Me Alone" payout option, rather than the 62 Leveling one.

After her first pension check was cashed, Plaintiff asked Maisto on January 8, 2007 why

---

[37] Id.

[38] Id.

[39] Compl. Ex. D at *2.

[40] Defs.' Resp. Kulaga Aff. Ex. at Merck 0043, 0162.

[41] Id. at Merck 0014, 0044.

[42] Id. at Merck 0044.

[43] Pl.'s Sur-reply to Defs.' Mot. for Summ. J. [Document No. 18] ("Pl.'s Sur-reply) Ex. A ¶ 4.

the amount of her check was different from what she expected.[44] Maisto realized Plaintiff had intended to select the "Life Income for Me Alone" payout option, rather than 62 Leveling one.[45] After researching the issue, Maisto e-mailed Plaintiff on January 12, 2007 to inform her that her pension election could not be changed, as the Annuity Starting Date had already passed making Plaintiff's election irrevocable.[46] Maisto acknowledged that Plaintiff never received a RBS estimate for the 62 Leveling payout option, so Maisto attached the December 20, 2006 RBS to her e-mail.[47] Maisto advised Plaintiff that if she wished, she could submit her situation to the Plan Administrator.[48]

On January 15, 2007, Plaintiff submitted a letter to the Plan Administrator asking that she be allowed "to receive the benefits that I thought I was electing based on the information available to me."[49] Plaintiff claimed that her mistake occurred because the RBS shows the Monthly Option with one amount to be received monthly up to age 62 and a lower amount to be received thereafter.[50] She argued that as there were no examples of the benefits available under the 62 Leveling payout option, she "reasonably assumed that the difference in payment at 62 meant that it was called the 62 Leveling Option."[51] Plaintiff also suggested that in order to avoid

---

[44] Defs.' Resp. Kulaga Aff. Ex. at Merck 0044.

[45] Id. at Merck 0161.

[46] Id. at Merck 0002.

[47] Id. at Merck 0002-0003, 0014.

[48] Id. at Merck 0003.

[49] Id. at Merck 0013.

[50] Id. at Merck 0012.

[51] Id.

8

such confusion in the future, the terminology in the RBS should be consistent with that in the Retirement Election Form.[52]

In a February 9, 2007 letter, the Claims Administrator, Mary Weber, denied Plaintiff's request to change her election of the 62 Leveling payout option.[53] Relying on the RBS statement that "In addition, Monthly Level Options are available. They will be furnished upon request," the Claims Administrator found that "the Plan provided [Plaintiff] with all the required information to allow [her] to select the form of benefit [she] desired."[54] Moreover, the Claims Administrator noted according to the terms of the Plan, the election of a payout option becomes irrevocable upon a Plan participant's Annuity Starting Date.[55] As Plaintiff's Annuity Starting Date of January 1, 2007 had already passed, Plaintiff's benefit election was irrevocable and could no longer be changed.[56]

Plaintiff appealed the Claims Administrator's denial of her request by letter dated April 6, 2007.[57] Plaintiff argued that the Claims Administrator failed to consider Plaintiff's reliance on Maisto's statement that Plaintiff had received all of the information she needed to make her election.[58] On May 30, 2007, the Committee denied Plaintiff's appeal.[59] The Committee pointed

---

[52] Id. at Merck 0013.

[53] Id. at Merck 0007.

[54] Id. at Merck 0008.

[55] Id.

[56] Id.

[57] Id. at Merck 0100.

[58] Id. at Merck 0100-0101.

[59] Id. at Merck 0031.

out that according to the terms of the Plan, a Plan participant's benefit election becomes irrevocable after the Annuity Starting Date.[60] The Committee also noted that the SPD provides explanations of the Social Security Level Income options, as well as the Social Security Bridge Transition Benefit.[61] In addition, the Committee stated that the Retirement Election Form also explains the various payout options.[62] Like the Claims Administrator, the Committee found that "the Plan provided [Plaintiff] with all the required information to allow [her] to select the form of benefit [she] desired."[63] The Committee also found that Plaintiff had properly selected the "Social Security Leveling to Age 62 Benefit" and her Annuity Starting Date had already passed, making her benefit election irrevocable.[64] Thus, the Committee decided that Plaintiff's benefit election could not be changed.[65]

On August 16, 2007, Plaintiff filed her Complaint, alleging violations of ERISA. Defendants answered on September 21, 2007 and the parties cross-filed for summary judgment on July 15, 2008. The Court has carefully reviewed the parties' Cross-Motions for Summary Judgment, the Responses, the Replies and the Sur-reply, and all accompanying materials, and this matter is now ready for disposition.

## II. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and

---

[60] Id. at Merck 0032.

[61] Id.

[62] Id.

[63] Id.

[64] Id.

[65] Id.

. . . the moving party is entitled to judgment as a matter of law."[66] An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[67] In examining these motions, all inferences must be drawn in the light most favorable to the nonmovants, and their allegations must be treated as true whenever they conflict with those of the movants and are supported by proper proofs.[68] The Court will not, however, make any credibility determinations or weigh the evidence presented.[69]

The party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact.[70] Once the movant has done so, the opposing party cannot rest on its pleadings.[71] To defeat summary judgment, the nonmovant must come forward with probative evidence demonstrating the existence of genuine issues for trial.[72] The nonmovant therefore must raise "more than a mere existence of a scintilla of evidence in its favor" for elements on which it bears the burden of production.[73] An inference based upon speculation or conjecture will not create a material fact.[74]

---

[66] Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[67] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

[68] Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004).

[69] Goodman v. Pa. Tpk. Comm'n, 293 F.3d 655, 665 (3d Cir. 2002) (quoting Reeves v. Sanderson Plumbing Prods., 560 U.S. 133, 150 (2000)).

[70] Fed. R. Civ. P. 56(c).

[71] Celotex, 477 U.S. at 324.

[72] Id. at 323-24.

[73] Anderson, 477 U.S. at 252.

[74] Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

11

## III. DISCUSSION

Plaintiff brings three claims under ERISA: (1) a claim under ERISA Section 502(a)(1)(B) that the RBS and Retirement Election Form provided to Plaintiff violated 29 U.S.C. § 1022(a);[75] (2) a claim under ERISA Section 502(a)(3) that Defendants breached their fiduciary duty to Plaintiff;[76] and (3) a claim that Defendants are equitably estopped from refusing to implement Plaintiff's intended election of the "Life Income for Me Alone" payout option.[77] Plaintiff's claim under ERISA Section 502(a)(1)(B) must fail as she has not shown that the decision of the Committee was arbitrary or capricious as a matter of law. With respect to Plaintiff's breach of fiduciary claim under ERISA Section 502(a)(3) and her equitable estoppel claim, Plaintiff has not produced sufficient proof of detrimental reliance, an element of both of these claims. Therefore, the Court will grant Defendants' Motion for Summary Judgment and deny Plaintiff's.

### A. The Committee Decision Was Neither Arbitrary Nor Capricious

Plaintiff brings her first claim pursuant to ERISA Section 502(a)(1)(B), invoking her right to bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan."[78] Plaintiff claims she is entitled to receive payment of her pension benefits as if she had elected the "Monthly Income for Me Alone" payout option. The Claims Administrator disagreed, denying Plaintiff's claim, and the Committee denied her appeal.

---

[75] Compl. ¶¶ 23-27; Pl.'s Mot. for Summ. J. [Document No. 12] ("Pl.'s Mot.") at *1-*2 § II.A.

[76] Compl. ¶¶ 28-34; Pl.'s Mot. at *2 § II.B.

[77] Compl. ¶¶ 29-44; Pl.'s Mot. at *2 § III.

[78] 29 U.S.C. § 1132(a)(1)(B).

12

"Decisions of ERISA fiduciaries generally merit deference from courts."[79] Courts will review a denial of benefits challenged under ERISA Section 502(a)(1)(B) "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine benefits or to construe the terms of the plan."[80] Here, the Plan gives the Committee, a named fiduciary, "full discretionary power and authority to make factual determinations, to interpret the Plan, to make benefit eligibility determinations, and to resolve all questions arising in the administration, interpretation and application of the Plan."[81] Thus, the Court will review the Committee's decision under an "arbitrary and capricious" standard, and will overturn the decision "only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan."[82] Under this standard, the "scope of review is narrow, and 'the court is not free to substitute its own judgment for that of the [administrator] . . . .'"[83]

Plaintiff does not argue that the Committee failed to comply with the procedures required by the Plan, nor do Plaintiff's arguments focus on whether the Committee's decision is supported by the record. Instead, Plaintiff seems to dispute the Committee's interpretation of the record. Even if the Court agreed with Plaintiff and viewed the record as she urges, the Court still could

---

[79] Romero v. Smithkline Beecham, 309 F.3d 113, 118 (3d Cir. 2002).

[80] Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

[81] Defs.' Resp. Kulaga Aff. Ex. at Merck 0236-0237 §§ 12.1, 12.3(c).

[82] Vitale v. Latrobe Area Hosp., 420 F.3d 278, 281-82 (3d Cir. 2005). Notably, Plaintiff does not argue, nor does the Court in its independent review of this case discern, any reason why a more heightened standard of review should apply. Thus, the Court will apply the ordinary "arbitrary and capricious" standard to its review of the Committee's decision.

[83] Martorana v. Board of Trustees of Steamfitters Local Union 420 Health, Welfare and Pension Fund, et al., 404 F.3d 797, 801 (3d Cir. 2005) (internal citation and quotation marks omitted).

not overturn the Committee's decision or rule in Plaintiff's favor unless it also found that the Committee's decision is clearly not supported by the record. That is not the case here.

The record shows that Plaintiff received several sources of information describing the various payout options. In addition to the SPD and the Election Retirement Form, Plaintiff also attended a teleconference during which the payout options were explained by Maisto. While none of the versions of the RBS given to Plaintiff prior to her Annuity Starting Date included information on the Monthly Level Income Options, two of the versions included language stating, "In addition Monthly Level Options are available. They will be furnished upon request."[84] Thus, there is support in the record for the Committee's finding that Plaintiff received all the information required for her to select the payout option she desired.

The Committee also found that Plaintiff properly selected the "Social Security Leveling to Age 62 Benefit." Plaintiff does not point to any deficiency in her completed Retirement Election Form, nor does the record reveal any irregularities. Hence, this finding is supported by the record as well.

Finally, it is undisputed that Plaintiff's Annuity Starting Date of January 1, 2007 had already passed at the time she submitted her claim. The plain provisions of the Plan provide that after the Annuity Starting Date, a Plan participant's election of a payout option is irrevocable. Thus, it was not arbitrary nor capricious of the Committee to apply the plain language of the Plan in denying Plaintiff's appeal.[85] Thus, in light of the terms of the Plan and the record in this case, the Committee's decision to deny Plaintiff's appeal was neither arbitrary nor capricious.

---

[84] Defs.' Resp. Kulaga Aff. Ex. at Merck 0015, 0020.

[85] See 29 U.S.C. § 1104(a)(1)(D); see also Vitale, 420 F.3d at 283-84.

Plaintiff contends that "but for the failure of the Defendant to provide adequate and clear documentation, Plaintiff would have been able to have checked the box for the benefits she believed she was selecting."[86] In support of this contention, Plaintiff cites 29 U.S.C. § 1022(a), which provides that a summary plan description "shall be written in a manner calculated to be understood by the average plan participant and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."[87] Although the scope of 29 U.S.C. § 1022(a) is limited to summary plan descriptions, Plaintiff does not identify any inadequate or deficient portions of the SPD in this case. Instead, she objects to the RBS and the Retirement Election Form.[88] Plaintiff does not, however, argue that the RBS or the Retirement Election Form are actually part of the SPD, nor does she explain why she believes 29 U.S.C. § 1022(a) should apply to such documents.[89] Hence, the Court is unpersuaded by this argument and will grant Defendants summary judgment on this claim.

### B. Plaintiff Has Produced Insufficient Proof of Detrimental Reliance

Plaintiff's remaining claims are for breach of fiduciary duty under ERISA Section

---

[86] Pl.'s Reply in Supp. of Pl.'s Mot. for Summ. J. [Document No. 17] ("Pl.'s Reply") at *3.

[87] Compl. ¶ 24 (citing 29 U.S.C. § 1022(a)).

[88] Compl. ¶¶ 26-27.

[89] Moreover, the Court finds no evidence indicating that the RBS or the Retirement Election Form constitute a summary plan description within the meaning of 29 U.S.C. § 1022. Like the overview brochure in Gridley v. Cleveland Pneumatic Company, both the RBS and the Retirement Election Form "lack[] virtually all of the categories of information required by ERISA for summary plan descriptions." 924 F.2d 1310, 1316 (3d Cir. 1991); see also 29 U.S.C. § 1022(b). Moreover, the SPD, which is unquestionably a summary plan description of the Plan, contains descriptions of many subjects that the RBS and the Retirement Election Form either omit or deal with in a much more perfunctory manner. See Gridley, 924 F.2d at 1316. Without any evidence to the contrary, the Court finds that the SPD is the summary plan description of the Plan; not the RBS nor the Retirement Election Form. Moreover, neither the RBS nor the Retirement Election Form are a part of or a portion of the Plan's summary plan description.

502(a)(3) and for equitable estoppel.[90] The Third Circuit has held that to establish a claim for breach of fiduciary duty under ERISA Section 502(a)(3), a plaintiff must demonstrate: "(1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation."[91] A claim for equitable estoppel requires a plaintiff to establish "(1) a material misrepresentation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances."[92] In other words, each of Plaintiff's remaining claims require her to prove detrimental reliance. Detrimental reliance requires Plaintiff to show that her reliance was not only reasonable, but that it caused her injury.[93] In order to demonstrate injury, Plaintiff must show that she was placed in a worse position because of the alleged material misrepresentations.[94]

Plaintiff alleges that as a result of Defendants' material misrepresentations, she was injured because she elected a payout option different from what she intended. Yet, according to terms of the Plan and the SPD, Plaintiff's intended election, the "Life Income for Me Alone" payout option, and her actual election, the 62 Leveling payout option, are actuarial equivalents with the same value. Plaintiff disputes this, contending that the two payout options are not actuarially equivalent because there is a significant likelihood that Plaintiff will live beyond the

---

[90] 29 U.S.C. § 1132(a)(3).

[91] Daniels v. Thomas & Betts Corp., 263 F.3d 66, 73 (3d Cir. 2001).

[92] Pell v. E.I. DuPont de Nemours & Company, Inc., 539 F.3d 292, 300 (3d Cir. 2008) (quoting Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 235 (3d Cir. 1994)).

[93] Curcio, 33 F.3d at 237; Smith v. The Hartford Ins. Group, 6 F.3d 131, 137 (3d Cir. 1993).

[94] See Daniels, 263 F.3d at 75.

age of sixty-nine. The Court is unpersuaded by Plaintiff's argument for two reasons. First, Plaintiff failed to produce any evidence beyond her own arguments demonstrating a genuine issue of material fact as to whether these two payout options are actuarially equivalent. Second, Plaintiff's logic is flawed. Plaintiff extrapolates her arguments from actuarial assumptions involving mortality rates, but she ignores the other actuarial assumption explicitly listed in the SPD—interest rates.[95] Furthermore, Plaintiff argues on one hand that her benefits are likely to be substantially reduced under the 62 Leveling payout option, but also argues that allowing her to receive her intended payout option will have no economic impact on the Plan itself, as all payout options are actuarially equivalent.[96] It is beyond this Court how Plaintiff could receive less benefits under one payout option as opposed to the other, and yet the Plan would remain unaffected under either scenario. An inference based upon speculation or conjecture will not create a material fact.[97] Thus, there is no issue of genuine fact as to whether the "Life Income for Me Alone" and the 62 Leveling payout options are actuarial equivalents.

Defendants argue that the actuarial equivalence of the two payout options is an absolute bar to Plaintiff demonstrating detrimental reliance, as she cannot establish injury.[98] The Court disagrees. It is true that Plaintiff cannot show prejudice just because she will receive her pension benefits in accordance with the 62 Leveling payout option, rather than the "Life Income for Me Alone" payout option. She will ultimately receive benefits of the same value either way. The

---

[95] See Compl. Ex. B at *21.

[96] Pl.'s Reply at *2, *4.

[97] Robertson, 914 F.2d at 382 n.12.

[98] Defs.' Resp. at *17-*18.

real difference between the payout options lies in the timing of the payment of Plaintiff's pension benefits. Thus, it is possible for Plaintiff to be in a worse position receiving payments based on one payout option instead of another. Nevertheless, Plaintiff has adduced no evidence, nor has she even argued, that she is prejudiced by the larger early payments and the smaller late payments of the 62 Leveling payout option. Thus, Plaintiff has failed to produce sufficient proof of injury, and therefore cannot establish that she relied on Defendant's misrepresentations to her detriment. As Plaintiff cannot satisfy the detrimental reliance element of either her ERISA Section 502(a)(3) breach of fiduciary duty claim or her equitable estoppel claim, the Court will grant Defendants summary judgment on the same.[99]

## IV. CONCLUSION

Plaintiff did not establish that the decision of the Committee was either arbitrary or capricious. Moreover, Plaintiff did not produce evidence of detrimental reliance, an element of both her claim for breach of fiduciary duty and her claim for equitable estoppel. Thus, the Court will grant Defendants summary judgment as to all of Plaintiff's claims.

An appropriate order follows.

---

[99] Although Defendants assert that Plaintiff cannot satisfy any of the elements of her ERISA Section 503(a)(3) claim and her equitable estoppel claim, the Court is persuaded that Plaintiff has produced insufficient evidence of detrimental reliance. Thus, it will not address Defendants' arguments as to the other elements of Plaintiff's claims.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANDRA E. KUSMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | No. 07-cv-3404 |
| MERCK & CO., INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**AND NOW**, this 13th day of March 2009, upon consideration of Defendants' Motion for Summary Judgment [Document No. 11], Plaintiff's Motion for Summary Judgment [Document No. 12], the parties' Responses [Document Nos. 14 and 15], the parties' Replies [Document Nos. 16 and 17], Plaintiff's Sur-reply [Document No. 18], and in accordance with the attached Memorandum Opinion, it is hereby **ORDERED** that Plaintiff's Motion is **DENIED** and Defendants' Motion is **GRANTED**. It is **FURTHER ORDERED** that all of Plaintiff's claims against Defendants are **DISMISSED**.

The Clerk of Court shall **CLOSE** this case.

It is so **ORDERED**.

BY THE COURT:

s/ Cynthia M. Rufe
_____
**CYNTHIA M. RUFE, J.**